Good morning. May it please the Court. My name is Karen Hanks, and I represent SFR Investment's Pool, 1, LLC. I'd like to reserve two minutes for rebuttal. Your Honors, our appeal kind of boils down to two issues. The first issue is in terms of affecting the case broadly, and then the second issue only impacts the judicial foreclosure claim. The first issue in this case is that the District Court, in the 2018 case, consolidated a 2019 action that, frankly, should have been dismissed for lack of subject matter jurisdiction because the Court had already been exercising in rem jurisdiction in the 2018 action. And then what she did is, sua sponte, when she consolidated the action, she allowed Bank of New York Mellon to essentially supplant their 2019 complaint. Well, Counsel, let me pick up on your – because you're raising a jurisdictional argument, which we have to address. The case you cited, Marshall v. Marshall, as I read it, relates to federal courts exercising jurisdiction over state court probate proceedings. What application does that case or another Supreme Court case that it's cited have to a federal court consolidating cases that were filed in the District Court itself? Well, we're not really objecting to the consolidation per se. The jurisdictional issue is that there was a 2018 complaint filed, and while it was dismissed against SFR, that court still had in rem jurisdiction. But what case supports the position that a federal court lacks jurisdiction over an interim proceeding that was also in the same federal district court? I thought that the cases we cited, that when one court is exercising in rem jurisdiction, I understand it's the same court, but it's a different judge. But as I said, that case relates to federal courts exercising jurisdiction over a state court probate proceeding and whether the federal court should not intrude in those proceedings by a state court. So is there a different case that you would cite that would support your jurisdictional argument? No, not that has the exact scenario that we have where there's two cases filed within the same district court as opposed to state versus federal. But the in rem principle still applies where there is still a district court within the federal court already exercising jurisdiction over that particular property, and then you have a secondary court, completely different judge, I understand it's within the same umbrella of the district court, of the federal court, but you have two cases that could potentially be impacting the property at the same time. So we're offering that as it's the same principle, even though it's not a state versus federal. But more so than that, the bigger problem here too is that when Judge Dorsey consolidated the cases, she didn't in fact consolidate them. She didn't treat them separate distinct cases within the same umbrella under her court. She essentially consolidated the cases and then allowed Bank of New York Mellon to essentially wipe the slate clean of the 2019 complaint, supplant it with the 2018 complaint, and then that rendered the 2019 complaint now timely. They both relate to the non-judicial foreclosure sale to your client by the Homeowners Association. That is true. So why is it supplanting something if it's the same, a common set of facts and legal issues? Well, they were different though, because while I understand the actual sale is the same, the allegations in the 2018 complaint were pretty sparse, and they clearly were only a shadow wood challenge. They only said there were issues with the notices. Couldn't this have been accomplished even without consolidation? I guess your point is no, because if it hadn't, consolidation is what allowed the relation back. Correct. And so we had a pending motion to dismiss in the 2019 action on a statute of limitations issue. I think they filed it well over five years, closer to six years, almost the six-year mark. And so our position is that complaint did not get treated in and of itself, and it would have been treated, likely been dismissed, and then they would have been left with the 2018 complaint. But we're still reviewing this. I guess you're making the jurisdictional argument, but if you get past the jurisdictional argument, then we're reviewing it for abuse of discretion, right? Well, I would disagree, because this is not so much that she granted a motion to amend. I'm coming from a de novo review in terms of procedurally allowing to consolidate cases, sua sponte, allow a party to amend. Well, but that's still—I mean, it may be a legal error, but it's still—I mean, if it's a legal error, you satisfy abuse of discretion, but we're still reviewing for abuse of discretion, I think. Isn't a motion to consolidate reviewed on appeal for abuse of discretion?  In other words, we're not disputing consolidation was error. She didn't consolidate, so that's where the error is in the sense that she didn't consolidate. If she had consolidated, we would have had two actions working in tandem, but she didn't. She consolidated— But then she allowed leave to amend, so it became a single action. The two cases both related to the nonjudicial foreclosure sale. She consolidated the cases under a single case number, I assume, and then allowed leave to amend in order to refine what the challenge was to that sale. Yes, but sua sponte without any opportunity for SFR to be heard of whether amendments should have been allowed and whether under Rule 15 it would have related back to 2018. We have cases that say that sua sponte amendment is allowed to refine any defects in the pleadings. So why is it in abuse of discretion here?  The problem is they had a one timely complaint that only had certain allegations, and then they had an untimely complaint. And she allowed the untimely complaint to supplant the timely complaint, and now they had allegations that we could have had different defenses to. So remind me of the history here because, as I understand it, there was a pending motion. So the first complaint had been dismissed. Correct. But there was a pending motion to reverse, basically a motion for reconsideration. Correct. And so the second complaint was basically a protective complaint just in case they lost that. So why don't we just consider, I mean, the district court could have, even under your theory, granted the motion for reconsideration of the dismissal because that was just a procedural dismissal, right? Yes, that's right. So it could have granted the motion for reconsideration, allowed that to go forward, and then allowed them to amend the complaint, and we would have been in the same spot. Possibly, possibly, but at that point, SFR could have been heard on whether the amendments that they were proposing should have related back. That's the problem because those two complaints were completely different. So you never got an opportunity to tell the district court that they shouldn't, even after it was done, you never had the opportunity to challenge that? You could have filed, didn't you file like a motion for reconsideration or say, hey, you can't do this? I don't know if we filed, I don't think we filed a motion for reconsideration, but we did argue that it shouldn't have related back. Well, right, so I don't understand your complaint. Well, at that point, I think she'd already done it. So it was, well, it's already done, and it does relate back. The district court had already effectively reversed herself because she dismissed the first complaint. So, I mean, you know, I just don't know what the fault is. It seems like a very technical argument that substantively has no impact here. And my argument would be that it's hindsight being 20-20. We're looking back and saying, well, what would you have done? What could you have done? And the problem is, to me, it's a fundamental due process. Well, that's what a motion for reconsideration is. I've never seen a motion for reconsideration that's denied where you say, well, the motion for reconsideration didn't give us relief because we never got the opportunity in the first instance. Like, that's what you do is you tell the district court, hey, something went wrong here, and the district court gets to reconsider that. And we did that, just not in the guise of a motion for reconsideration. Do you want to reserve? I would, and then I can address the second issue, hopefully, on rebuttal. Very friendly, counsel. You're sitting at the same table. This is good. Ms. Angston, I have been litigating for years, Your Honor. We are friends. That said, she should lose today, and I'd like to explain why. Ariel Stern for Bank of New York Mellon. I'd like to start with the jurisdictional issue. We read the prior exclusive jurisdiction doctrine as Judge Sanchez did, which is as applying really in state versus federal court contexts. We looked for cases where one federal district court with two different judges were exercising interim jurisdiction over the same res and did not find application of this doctrine. And we would say that the doctrine reads more as almost a prudential abstention doctrine rather than an actual jurisdictional doctrine, and the infirmity that SFR points out here is not really one of subject matter jurisdiction. There is no dispute that the parties are diverse, that the amount of controversy is satisfied. So it's not really going to Article III jurisdiction, Article III subject matter jurisdiction. It's really more of the credential directive to the federal courts to not interfere when the state court is already exercising jurisdiction over the same res. And that's how we see it. For that reason, I think we didn't find a case on point or really even suggesting that the doctrine would apply to the same federal district court where two judges have pending cases. And so we don't see a jurisdictional problem here. Can I switch you over to the automatic acceleration issue in the statute of limitations? So sitting in diversity, we have to apply Nevada law to determine whether a bankruptcy discharge automatically accelerated the due date on the note, thereby triggering this six-year statute of limitations for Bank of New York Mellon. And there's this West Coast Servicing v. Kassler case that the Nevada Supreme Court issued. It was non-published, but is that the persuasive authority that we should look to to try to predict what the Nevada Supreme Court would do in this type of claim? Yes, directly from the Nevada Supreme Court is quite persuasive, although as you correctly point out, it's not published, and so it's not a binding statement of Nevada law. But in practice, the Nevada Supreme Court frequently gives hints as to where it's going to go in a published decision if the issue continues to percolate up. And it would be within our expectation that in a published decision the same ruling would prevail. And not only our expectation, actually SFR's expectation as well. So tell me why the automatic acceleration argument does not hold. Your Honor, because the state Supreme Court has in the past said that only, and this is the Clayton case, only a very definitive and unquestionable act on the part of the holder of the security can accelerate. So for the bank to accelerate either, it has to do something very explicitly. And that typically in practice is a letter that comes to the borrower before the actual institution of the foreclosure, or in this case it's the either or. The bank can do it as it did in this case by filing a complaint for judicial foreclosure. That's the unequivocal affirmative step. The problem with tagging it to a bankruptcy filing is that while the bankruptcy filing stops the collection process and subsequently the discharge relieves the borrower of any obligation to make payments from that point forward, the borrower remains able to make payments because the lien survives. And with the lien surviving, and this was the case with respect to this loan, the borrower, as a trial modification, tried to continue to make payments to prevent foreclosure. And so it just doesn't make that much analytical sense to square the objectives of the federal bankruptcy procedure, which is to give the borrower a fresh start in order to try and consolidate debts or to discharge those debts on the one hand. And on the other hand, the state law objective, which is to enforce timeliness by instituting a statute of limitation. Did the bank receive any payments after the bankruptcy was filed? I don't recall that, Your Honor, precisely. There were a couple of trial payments in the 2011 time period, but I don't recall precisely whether those payments were actually made or if there was just a negotiation among the parties. I don't believe that that was fleshed out fully in the trial, and so the record doesn't speak directly to that. Would it be a violation of the automatic stay for the bank to issue an acceleration letter after the bankruptcy? An acceleration after the bankruptcy likely would violate the automatic stay without prior relief from the bankruptcy court. However, that is not in the record here, and I don't believe that actually happened here. So to kind of sum up the state of the law here, not only did the Navaspring court indicate where it would likely go as a matter of state law, what can be described as the contrary federal president, the Jarvis case, also unpublished, had a line that said very clearly that the application of the statute of limitations is a matter of state law. And so the effect of bankruptcy law, whether it's the stay of collection proceedings or an eventual discharge, should not even under the Jarvis, admittedly the unpublished dictum, but still the pronouncement from this court in Jarvis, should not really govern because it's a matter of state law whether the statute of limitations applies or not or gets triggered or not. One of the things that Kessler seems to indicate is that a court should look to the instrument that's being referenced in the statute. And in this case, for this statute of limitations, it's talking about the note. Is there anything in the note itself that would suggest or indicate that filing or a bankruptcy discharge accelerates the terms of the note? No, Your Honor. Or the maturity date? On the face of the note itself, it would not say that, Your Honor. I think the contract and… Anything in the deed of trust? The deed of trust, I believe, I'm doing this a little bit on memory, I believe the deed of trust gives the bank the ability to accelerate if there is a bankruptcy because the bankruptcy can be deemed as an event of default, even if the loan is being performed. But it's not automatic. In other words, the deed of trust does not have a self-executing mechanism where a bankruptcy filing or any occurrence in the bankruptcy court would result in an acceleration. The bank has to do something separately and affirmatively to actually invoke the acceleration right. So I think the way I would say it is the contracts preserve that right, but they're not automatic. They're not self-triggering. With respect to the… Finally, to finish up on this bankruptcy issue, even the Washington Supreme Court in the Merritt case backed off or signaled that even under Washington law, which the Jarvis court had been looking at, even under Washington law, the bankruptcy filing and subsequent events in the bankruptcy court do not, for purposes of Washington law, accelerate. So not only do we have Kessler from Nevada, but even the other state in the Ninth Circuit, Washington, that was the basis of Jarvis, supports the bank's position in this case. And is there any other Nevada court decision that we might be able to look to to shed light on this question? I don't think so. I think Kessler is the best we have, and we would urge the court to consider Kessler seriously, although, as we've discussed, it's not published. It doesn't mean that it's not authoritative. I think the Nevada Supreme Court's unpublished decisions are a good predictor of what the court would ultimately do in a published case. I'd like to, in the minute and a half I have left, address the procedural history of the case real briefly and address in particular whether SFR was heard on the consolidation, and, in fact, it was. There was a motion for reconsideration, and I'd like to point the court to where we can find that. And this is on the supplemental excerpts of record. Towards the very end, starting on page SER384, there is a motion for reconsideration, and that motion is addressed by Judge Dorsey on page 43 of the supplemental excerpts of record. And since we have just a short while here left, what I'd like to emphasize about Judge Dorsey's decision, and I'm reading from page SER45. This is page 45 of the supplemental excerpts. She writes, quote, so that I can ensure fair consideration of SFR's argument about the timeliness of these new theories, I grant its motion for reconsideration to the extent that I look at these new arguments. I look anew at the arguments, but my conclusion after reconsideration remains the same. So the court did, in fact, consider SFR's position on this, and that's in the record. And you said she granted it. She granted reconsideration but did not change her mind. And I think what she's saying there is that she actually looked at the argument. Okay, thank you, counsel. Thank you. Your Honor, I'd like to take the last few minutes to address the bankruptcy issue. There's a secondary argument in terms of the acceleration, and that is that the bank at trial argued they accelerated at the time of the complaint, which was January 24, 2019. That's the first time they alleged judicial foreclosure. Because it wasn't in the 2018 complaint? It was not, no. That claim was not at all in that complaint. And yet, at trial, they asked for all the amounts due as of the date of default from 2008. So that was our secondary issue, was alternatively the statute of limitations at least ran on those installments that were unpaid. So if in 2019 you're accelerating the loan in January... Wait, so you did raise that below. For some reason, I thought you didn't raise that argument below. They argued we didn't raise it below. We argued the statute of limitations under NRS 104. We raised different various states of acceleration. We raised the bankruptcy filing, the bankruptcy discharge. But you specifically raised the idea that only a portion of it wouldn't have been due. No, we did not raise that, but we established it in our questions of the bank of what amounts that they were seeking. And so we argued various different dates of when that statute of limitations would have ran. The court rejected those dates. But when we established in trial that there was no other date that the bank was claiming they accelerated the loan, they doubled down and said, no, it's at the time we filed our complaint, which was January 24, 2019. The court then did not take NRS 104 and apply it and say, okay, you're limited then in what you can claim. And yet the bank did not account for that in their amounts that they were claiming. Do you have any case law that supports that idea that if they didn't violate the statute of limitations overall that some earlier payments outside the statute of limitation would fall out? Well, it's NRS 104-3118 that explains... I understand the statute. Do you have a case law that deals with loans that says that earlier payments fall out of the ultimate loan obligation? I don't know that we found that particular case law. I think we relied entirely on the statute explaining that it runs from either the date of each unpaid installment or the date you accelerate. I don't believe there would be any case law that would be required to analyze that, Your Honors. And so we would argue that... Well, frankly, the judgment in this case does not have any amount in it, so it is deficient in terms of NRS 40.430. But to the extent that after we leave here, Bank of America... Excuse me, Bank of New York Mellon asked the court to amend its judgment to include those amounts, the trial record makes clear that they were seeking sums all the way back to the original date of default. And you could raise those arguments again when they asked for the amendment, right? I guess we would have to, Your Honor, but I wanted to make sure that there was some direction from this court that, yes, 104 would need to be considered, because if, in other words, the court is finding and is affirming the district court that acceleration did occur at the time of filing the complaint, because that's what she found and that's what B. and Mona Mellon argued, then we do need to factor in NRS 104.3118. Okay. All right, thank you. Thank you to both counsel for your helpful arguments. The case is now submitted.
judges: NELSON, FORREST, SANCHEZ